THE EDGAR COLLEGIATE INSTITUTE

*v.*

THE PEOPLE *ex rel.* Frank P. Hardy.

*Filed at Springfield November 2, 1892.*

1. CORPORATION—*dissolution for non-user and abuse of its franchise.* Where a corporation chartered in 1867, "for the purpose of maintaining an institution of learning," in which all the branches of a classical, literary and scientific education might be taught, ceased to be an institution of learning for ten years before the institution of a proceeding to declare its charter forfeited, and sold the buildings, which were removed, and attempted to sell its lands, abandoning the intention of continuing the corporation for the purposes originally intended, it was *held,* that a judgment of ouster against the corporation was proper.

2. The grant of a charter, or right to be a corporation, is upon the implied condition that the grantee shall act up to the end and design of its creation. Hence, through neglect or abuse of its franchise a corporation may forfeit its charter as for condition broken or for a breach of trust.

3. Where a misuser is relied on as the foundation for proceedings to procure a forfeiture of the corporate franchise, it must appear that there has been such a neglect or disregard of the corporate trust, or such a perversion of it to private purposes, as in some manner to lessen the utility of the corporation to those for whose benefit it was instituted, or work some public injury.

WRIT OF ERROR to the Circuit Court of Edgar county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

Mr. H. VAN SELLAR, Mr. JOSEPH E. DYAS, and Mr. GEORGE A. VANDYKE, for the plaintiff in error:

The issue presented is, whether the plaintiff in error has done or omitted to do any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation. Starr & Curtis' Stat. p. 1871, par. 1.

The proceeding by *quo warranto* is regarded as a mode of criminal prosecution. *Donnelly* v. *People*, 11 Ill. 552; *People* v. *Railroad Co.* 13 id. 66; *Wight* v. *People*, 15 id. 417.

Non-user of its franchise by a private charitable corporation is no ground for forfeiture of its character, where it does not appear that the public are injured thereby. *Attorney General* v. *Bank of Niagara*, Hopkins' Ch. 411; *Regents* v. *Williams*, 9 Gill & J. 365; *State* v. *Threshing Manf. Co.* 40 Minn. 213; High on Ex. Rem. secs. 666, 667, 668, pp. 488, 489; Angell & Ames on Corp. secs. 773, 774; *People* v. *Bank*, 6 Cow. 212.

There was no misuser of the franchise, within the meaning of the statute. The sale of the property of a corporation does not disorganize it. *Bruffett* v. *Railroad Co.* 25 Ill. 353.

A mere error of judgment, either as to the law or the facts, by the trustees, is not a ground of forfeiture. High on Ex. Rem. sec. 668.

Mr. F. P. HARDY, State's Attorney, Mr. F. W. DUNDAS, and Mr. R. L. McKINLAY, for the defendants in error:

The statute of Illinois makes non-user alone ground for forfeiture, and makes misuser ground for forfeiture. 2 Starr & Curtis' Stat. 1871.

The proceeding by *quo warranto* is now regarded as in the nature of a civil remedy. In *People* v. *Railroad Co.* 25 Ill. the court says: "If there is a cause of forfeiture for non-

user, it must be determined judicially to make it effectual." In this case it was so determined by the trial court.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The Edgar Collegiate Institute was incorporated under an act of the legislature to that effect, approved March 8, 1867, "for the purpose of maintaining an institution of learning in or adjacent to the town of Paris." (Private Laws of 1867.) The fourth section of the act is as follows: "All the property, both real and personal, belonging to the trustees of Edgar Academy is hereby vested in the corporation created by this act, and said corporation is hereby authorized to establish, maintain and perpetuate an institution of learning for both male and female, in which all the branches of a classical, literary and scientific education may be taught; also, to grant diplomas and confer degrees, and do all other acts and things usually done by colleges and universities; and the property of said incorporation shall be exempt from taxation to the value of $25,000."

No institution of learning is now in existence in the name or under the control of the Edgar Collegiate Institute, nor has there been such an institution of learning in existence within the period of ten years next before the filing of the information, although a private school was kept on property whereof that corporation claimed ownership, under the direction of officers of the Presbyterian church, at a period extending not later than to within five or six years before the filing of the information, but since that time no institution of learning has been in existence on that property. The school house and out buildings, whereof the corporation claimed to be owner, were sold and removed from the places they had occupied, and afterwards, on the 15th of May, 1889, the corporation attempted to sell and convey all the real estate whereof it claimed to be owner, to the trustees of the Presbyterian church. At that

time it was determined by those controlling the corporation that it was impracticable to carry on an institution of learning.

The only evidence tending to prove that this abandonment of intention to carry on an institution of learning by the corporation was not final and irrevocable, is that of H. F. Nelson, one of the trustees of the corporation at the time the instrument assuming to be a conveyance was executed. He testified, among other things, thus: "There was a settled determination to hold the property for future developments. Some of the trustees of the Edgar Collegiate Institute are also members of the session of the Presbyterian church, and in that way we have an interest in it." On cross-examination: "I don't think the trustees of the Presbyterian church and Collegiate Academy ever abandoned the intention of having a school there. They spoke of that frequently, before and after the deed was made. Long before this suit was thought of we talked the matter over frequently, and our consideration of it began to crystalize into a fixed resolve to keep the property for some future developments, and if we used it as a parsonage, to lease it and keep it for a school, thinking that possibly the demands of Paris after awhile would require a school of a higher order. I think we always kept up our organization as trustees." And on re-direct: "We thought we would use it as a parsonage, and at some future time we might need it for a high school."

The rule is, that it is a tacit condition of the grant to be a corporation, that the grantees shall act up to the end or design for which they were incorporated, and that hence, through neglect or abuse of its franchise, a corporation may forfeit its charter as for condition broken or for a breach of trust. (Angell and Ames on Corp. sec. 774, and cases cited in note 1; High on Extraordinary Remedies, sec. 666.) And our statute provides, that proceedings in the nature of *quo warranto* may be prosecuted against a corporation where it "does or omits any act which amounts to a surrender or forfeiture of its

rights and privileges as a corporation." (Rev. Stat. 1874, sec. 1, chap. 112; 2 Starr & Curtiss, 1871.) It is true that "where a misuser is relied upon as the foundation for proceedings to procure a forfeiture of the corporate franchise, it must appear that there has been such a neglect or disregard of the corporate trust, or such a perversion of it to private purposes, as in some manner to lessen the utility of the corporation to those for whose benefit it was instituted, or to work some public injury." (High on Extraordinary Remedies, sec. 666.) But it has been seen, here, that there has been a total abandonment, for years, of the corporate trust,—namely the maintaining of an institution of learning in which the branches of a classical, literary and scientific education are taught, in or adjacent to the town of Paris,—and so those for whose use and benefit the corporate trust was instituted have wholly lost and been deprived of it, and it is not shown that such an institution will certainly be attempted to be established at any time in the future. Moreover, under this charter $25,000 of the corporate property, without qualification or restriction, is exempt from taxation. Since its enactment, our constitution has been amended so that there can now be no exemption from taxation save by general law. (Const. of 1870, art. 9, sec. 3.) And the general law only exempts from taxation such property of institutions of learning as is "not leased by such institutions or otherwise used with a view to profit." It would therefore be a gross wrong upon the public if this institution should be allowed the benefit of the exemption from taxation given by its charter, as it must if it has not forfeited its rights under its charter, while at the same time it fails to discharge the trust to the public for which the corporation was created.

It follows, necessarily, from the views we have expressed, that in our opinion the circuit court was right in giving judgment of ouster against the corporation.

The judgment is affirmed. *Judgment affirmed.*