Syllabus.

# H. B. CATLETT

*v.*

## THE PEOPLE *ex rel.* STATE'S ATTORNEY.

*Filed at Springfield, June 16, 1894.*

1. QUO WARRANTO—*of the pleadings.* In a proceeding by information in the nature of a *quo warranto*, the defendant must answer by a disclaimer of title, or justify by showing title. If he disclaims, the People are at once entitled to judgment. If he justifies, he must set out his title specially. He must show on the face of the plea that he has a valid title to the office. The People are not bound to show anything.

2. CITIES AND VILLAGES—*change of organization or name.* When an information in the nature of a *quo warranto* charges certain persons, acting as the president and board of trustees of a village, with usurping the powers granted by the act of 1872, relating to cities and villages, a plea setting up the incorporation of a town of the same name is bad, if it fails to show how the incorporated town became converted into the village, as a mere change in the name from the town of F. to the village of F., can not change an incorporated town into an incorporated village.

3. An act passed March 7, 1872, to enable any city, town or village in this State to change its name, provides the mode in which such change may be effected: by filing the proposed name with the Secretary of the State, and obtaining from him a certificate; by presenting a petition to the corporate authorities of the town for the change; by an order of such authorities, after notice and hearing, and by filing a copy of such order with the Secretary of State, and publication.

4. But Art. 11 of the City and Village act provides an entirely different method by which an incorporated town may become organized as a village. By the terms of such article, upon petition of thirty voters, the president and trustees of the town must submit to the legal voters the question whether the town shall become a village, and fix a time and place for holding the election, and appoint the judges thereof, and give fifteen days' notice by posting, etc.; the votes must be returned and canvassed; a statement of the result must be entered upon the records of the town, and provision is made, in case a majority of the votes is cast for organization as a village, for electing six trustees of the village, whereas, under the old law, a town was only entitled to five trustees.

5. LIMITATIONS—*of quo warranto proceeding.* In the absence of any statutory period of limitation, it is held in this country that the attorney general may file an information in behalf of the people at any time;

and that the lapse of time constitutes no bar to the proceeding, in conformity with the maxim, *nullum tempus occurrit regi.*

6. SAME—*as against the State.* It is a familiar doctrine that the State is not embraced within the statute of limitations, unless specially named, and, by analogy, will not fall within the doctrine of estoppel.

7. SAME—*as against municipal corporations.* Municipal corporations are not within the operation of the statute of limitations, as respects public rights, although the rule is different as to contracts, or mere private rights.

8. SAME—*as against public rights.* The legal existence of a municipal corporation is a matter of public right, and in a proceeding by information in the nature of a *quo warranto* to test its existence, or the right of its officers to exercise corporate powers, etc., the statute of limitations will not apply, nor the doctrine of estoppel, except in special and peculiar cases.

9. ESTOPPEL — *quo warranto proceeding assailing the validity of a municipal corporation.* The doctrine of estoppel *in pais* is sometimes applied to municipal corporations, even when the *quo warranto* proceeding involves a question of public right, but such cases are exceptional, and, when they occur, the public is only held to be estopped on account of special circumstances, which would make it highly inequitable or oppressive to enforce public rights.

10. MUNICIPAL CORPORATIONS—*legislative recognition of existence.* As municipal corporations are legislative creations, their legal organization may well be presumed from legislative recognition. But the fact that the Secretary of State ascertains the name of a village, and puts it on the list of the names of all the cities, towns and villages in the State, and keeps it filed in his office as a part of such list, has no significance as a recognition of corporate existence.

APPEAL from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

Messrs. LAWRENCE & LAWRENCE, attorneys for appellant.

Mr. S. G. WILSON, State's Attorney, Mr. EDWIN WINTER, and Messrs. BLACKBURN & REARICK, attorneys for appellees:

In this action the appellants were obliged "either to disclaim, in which case the people were at once entitled to judgment, or to justify, in which case it was their duty to

2—151 ILL.

set out their title specifically.''   *Carrico* v. *People*, 123 Ill. 203; *Ill. Midland Ry.* v. *People*, 84 id. 426; *Holden* v. *People*, 90 id. 434; *Att'y Gen.* v. *Foote*, 78 Am. Dec. 689.

If any organization ever existed under laws in force in 1863, it has evidently been abandoned.

It is self-evident that without a change of organization these six trustees and a president could not all be legally holding office under a town entitled to a board of five trustees.   The pleas do not state when the change occurred from five to six trustees and a president; hence no time is fixed when the statute of limitations began to run.   And we further submit that the statute is not a bar to a *quo warranto* proceeding.

''In the absence of any statutory period of limitation, it is held in this country that the attorney general may file the information on behalf of the people at any time, and that lapse of time constitutes no bar to the proceeding, in conformity with the maxim, *nullum tempus occurrit regi*.'' High Ext. Leg. Rem., sec. 621; *State* v. *Pawtuxet, etc., Co.*, 8 R. I. 521; Dillon Mun. Corp., sec. 671 *et seq.* (4th ed.); *Logan Co.* v. *Lincoln*, 81 Ill. 156; *County of Piatt* v. *Goodell*, 97 id. 84; *School Directors* v. *School Directors*, 105 id. 653; *Lee* v. *Mound Station*, 118 id. 304; *People* v. *Town of Oran*, 121 id. 650.

A marked distinction exists between a *quasi* corporation, like a school district, and a municipal corporation proper, like a city or village.   *Elmore* v. *Drainage Com.*, 135 Ill. 269; 15 Am. & Eng. Ency. 954, 955.

And, therefore, the statute does not apply to the case at bar, for it is a proceeding brought by the People, concerning a public right, and as against them the statute of limitations does not run, unless such intention is expressed. Buswell on Limitations, p. 149; *Lindsey* v. *Miller*, 6 Peters, 666; *Gibson* v. *Chouteau*, 13 Wall. 92; *U. S.* v. *Beebee*, 127 U. S. 338; *State Bank* v. *Brown*, 1 Scam. 106; *Spellman* v. *Curtenius*, 12 Ill. 409; *People* v. *Brown*, 67 id.

435; *Galbraith* v. *Littiech*, 73 id. 209; *People* v. *Gilbert*, 18 Johnson (N. Y.), 227.

And we submit that the facts set up in these pleas do not estop the State from making this inquiry.

Mere acquiescence in the exercise of its corporate functions is not sufficient. *Weismer* v. *Douglas*, 64 N. Y. 105; *Lee* v. *Mound Station*, 118 Ill. 317.

And its recognition of its corporate existence, as is claimed by the respondent, by the county clerk and the Secretary of State, can have no effect whatever. 19 Am. & Eng. Ency. 507; *Cawley* v. *People*, 95 Ill. 256.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an information in the nature of *quo warranto* by the State's Attorney of Vermilion county, "who sues for the People of the State of Illinois," against J. W. Turner, J. A. Cox, Ed. Robinson, Peter Barry, J. H. Wells, J. M. Hall, and the appellant, B. H. Catlett, charging that they execute without any warrant or right whatever, the office or corporate name of President and Board of Trustees of the Village of Fairmount, and as such are unlawfully, without grant or charter, assuming to be a body corporate and politic by the name and style of The Village of Fairmount, and by such name and style are, without warrant of law or charter, assuming and usurping the powers granted by the act of the General Assembly of the State of Illinois to provide for the incorporation of cities and villages, approved April 10, 1872, in force July 1, 1872, and acts amendatory thereof, etc.; and praying that they show cause by what warrant they claim to hold and execute the said office, etc.

The defendant Turner, as president, and five of the other defendants, as trustees, filed an answer, to which the People demurred; and, the demurrer having been sustained, said defendants elected to stand by their answer. The defendant, Catlett, filed a demurrer to the informa-

tion, which was overruled; and he then filed four pleas, to which the People demurred, and their demurrers were sustained. He elected to stand by his first and second pleas; and, by leave of court, amended his third and fourth pleas, and filed an additional plea. The latter pleas were demurred to by the People, and their demurrer was sustained. To the order sustaining this demurrer the defendant, Catlett, excepted, and elected to stand by his pleas. The court thereupon found the defendants guilty, and rendered judgment of ouster against them, and that they be prohibited from exercising the offices and franchises of the alleged Village of Fairmount. From said judgment the defendant, Catlett, prosecutes the present appeal.

Of the pleas thus filed the first was not guilty, and the second was the five years' statute of limitations. The other pleas allege, in substance, that the north half of the southeast quarter of section four, township eighteen, range thirteen, in Vermilion county, Illinois, had been laid off into lots, blocks, streets and alleys, and in January, 1863, contained more than one hundred and fifty inhabitants, when pursuant to the provisions of the statute, a vote of the legal voters of said territory was had, which was favorable to the incorporation of said territory, as a town, and pursuant to said statute an election was had for the election of five trustees for said town, and that on the 14th day of February, 1863, there was filed in the office of the circuit clerk of said county, a certificate of the president and clerk of said first meeting to vote upon the question of incorporation, setting forth the result thereof, and the name of the town, being Fairmount, which certificate was recorded in the deed records of said clerk's office. That annually since said time trustees have been elected for the said village, taxes levied, collected and expended for municipal purposes, as provided by law; that ordinances have been passed, published and enforced; a stone prison has been built, an interest in a town hall purchased, a park is owned, and all

now maintained by the village; streets improved, and debts incurred for the corporation, which remain unpaid, and the general powers and duties of a municipal corporation have been exercised by the village from its said organization un til the present time. It is further alleged that about the year 1872, and after the act of 1872, providing for the incorporation of cities and villages, the trustees changed the name from "Town of Fairmount" to "Village of Fairmount," and soon thereafter the clerk of the county of Vermilion, upon the request of the Secretary of State to furnish the names of all incorporated cities and villages in said county, furnished, among others, the name of the Village of Fairmount, which name was duly registered by the said secretary, in a book required by law to be kept by him in his office, and that it has ever since said year 1872 been in the list of incorporated villages of this State, in the office of the Secretary of State.

Counsel for appellant concede in their brief, that the first and second pleas are "too general under the statute regulating the practice in a *quo warranto* proceeding." In the proceeding by information in the nature of a *quo warranto* the defendant must answer by a disclaimer of title, or justify by showing title. If he disclaims, the people are at once entitled to judgment. If he justifies, he must set out his title specially. He must show on the face of the plea that he has a valid title to the office. The people are not bound to show anything. Being called upon to show by what warrant he exercises the functions of the office, if he does not exhibit good authority for doing so, the people are entitled to judgment of ouster. *Carrico* v. *The People*, 123 Ill. 198; *Holden* v. *The People*, 90 id. 434; *Clark* v. *The People*, 15 id. 213.

We do not deem it necessary to consider the question, whether or not the Town of Fairmount was in all respects legally organized as a town under the act in relation to the incorporation of towns, which was in force in 1863. (1

Scates & Blackwell's Stat. of Ill. of 1866, page 195; Gross' Stat. of Ill. of 1871, page 96.) For the purpose of determining whether the Circuit Court decided correctly in sustaining the demurrer to the amended and additional pleas, it may be admitted that the Town of Fairmount existed as a legal incorporation prior to 1872. The present information charges usurpation of the powers granted by the Act of 1872, providing for the incorporation of cities and villages. The pleas do not explain how the incorporated Town of Fairmount became converted into the Village of Fairmount. A mere change of the name from the "Town of Fairmount" to the "Village of Fairmount" could not change an incorporated town into an incorporated village. An act, passed on March 7, 1872, to enable any city, town or village in this State to change its name, provides the mode in which such change may be effected: by filing the proposed name with the Secretary of State, and obtaining from him a certificate; by presenting a petition to the corporate authorities of the town for the change; by an order of such authorities after notice and hearing; and by filing a copy of such order with the Secretary of State, and publication, etc. (1 Starr & Cur. Ann. Stat., page 513.) But article eleven (XI) of the City and Village act provides an entirely different method by which an incorporated town may become organized as a village. By the terms of said article, upon petition of thirty voters, the president and trustees of the town must submit to the legal voters the question whether the town shall become a village, and fix a time and place for holding the election, and appoint the judges thereof, and give fifteen days' notice by posting, etc.; the votes must be returned and canvassed; a statement of the result must be entered upon the records of the town; provision is made, in case a majority of the votes cast is for organization as a village, for electing six trustees of the village, whereas, under the

old law, a town was only entitled to five trustees; there are other provisions, which it is not necessary to specify.

The pleas set up the organization of the described territory into a town in 1863, but they are fatally defective in failing to allege and show how the town became a village. The theory of the defense is, that, as the name was changed from "Town" to "Village," and the incorporation was thereafter called a village, and for a number of years exercised the powers of a village, and as its name as a village was furnished to the Secretary of State and filed in his office under section 3 of said act of March 7, 1872, therefore the People are estopped and barred by the general doctrine of estoppel and by the statute of limitations from maintaining this proceeding.

In the absence of any statutory period of limitation it is held in this country, that the attorney general may file the information on behalf of the People at any time, and that lapse of time constitutes no bar to the proceeding in conformity with the maxim, *nullum tempus occurrit regi.* (High's Ext. Leg. Rem., sec. 621; *State* v. *Pawtuxet, etc., Co.,* 8 R. I. 521.) It is a familiar doctrine, that the State is not embraced within the statute of limitations unless specially named, and, by analogy, would not fall within the doctrine of estoppel. (*People* v. *Brown,* 67 Ill. 435; *State Bank* v. *Brown,* 1 Scam. 106; *Gibson* v. *Chouteau,* 13 Wall. 92; *People* v. *Gilbert,* 18 Johns. 227.) Municipal corporations are not within the operation of the statute of limitations as respects public rights, although the rule is different as to contracts or mere private rights. (*Logan Co.* v. *Lincoln,* 81 Ill. 156; *County of Piatt* v. *Goodell,* 97 id. 84; *Lee* v. *Town of Mound Station,* 118 id. 304.) The legal existence of a municipal corporation is a matter of public right. An information in the nature of *quo warranto* to test the organization of a municipal corporation, like a village or city, concerns public rights. (*Chesshire* v. *The People,* 116 Ill. 493.) Municipal cor-

porations derive their franchises from the State, and the powers which they possess are held by them in trust for the people of the municipality, and for the public generally. (*Zanone* v. *Mound City*, 103 Ill. 552.) Where a municipal corporation represents the public at large, or the State, the statute of limitations, as such, is not applicable. (*Madison County* v. *Bartlett*, 1 Scam. 67; *Sims* v. *The City of Frankfort*, 79 Ind. 446.)

As the present proceeding is brought by the People concerning a public right, the statute of limitations does not apply. It is true, that the doctrine of estoppel *in pais* is sometimes applied to municipal corporations, even when the *quo warranto* proceeding involves a question of public rights, but .such cases are exceptional, and, when they occur, the public is only held to be estopped on account of special circumstances, which would make it highly inequitable or oppressive to enforce public rights. (*County of Piatt* v. *Goodell, supra; Logan County* v. *Lincoln, supra;* 2 Dillon's Mun. Corp, 4 ed., sec. 675.) We do not think that any such special circumstances exist in the present case. In *Jameson* v. *The People*, 16 Ill. 257, one of the special circumstances which induced the court to indulge in a presumption in favor of the legal existence of a municipal corporation, after long continued use of corporate powers, and public acquiescence therein, was the recognition of the existence of the municipality by an act of the legislature. The question raised by the *quo warranto* proceeding was the legality of the organization of the town of Oquawka, and by a subsequent act of the legislature that town was authorized to subscribe to the capital stock of certain corporations. As municipal corporations are legislative creations, their legal organization may well be presumed from legislative recognition. Here, the circumstance, that the Secretary of State ascertained the name of the village and placed it upon the list of the names of all the cities, towns, villages, or other municipal corporations in

the State, and kept it filed in his office as 'a part of such list, has no significance as a recognition of corporate existence. (*Lee* v. *Mound Station, supra.*)

In *The People* v. *Boyd*, 132 Ill. 60, the rule was fully recognized, that the statute of limitations is applicable where the object of the *quo warranto* proceeding is to enforce private rights as distinguished from public rights; it was made to apply in that case, because of the peculiar circumstances there existing; the municipality there under consideration was a *quasi* corporation, and not a city or village. (*Elmore* v. *Drainage Com.*, 135 Ill. 269; 15 Am. & Eng. Enc. of Law, p. 955; 19 Am. & Eng. Enc. of Law, p. 667.) It was said in that case: "We do not wish to be understood as deciding, because the question is not presented, that the statute of limitations above quoted, in all cases of information in cases of *quo warranto*, would be a bar."

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*